**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| BBLI EDISON LLC, a Delaware limited liability company, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. _____ |
| CITY OF CHICAGO (DEPARTMENT OF HOUSING), | ) ) ) | |
| Defendants. | ) ) ) | |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

Plaintiff BBLI Edison LLC ("Plaintiff") brings this Complaint ("Complaint") for Declaratory and Injunctive Relief against Defendant City of Chicago (Department of Housing), due to an amended ordinance that is impermissibly ambiguous, overbroad, penal in nature, and unconstitutional in that it now requires lenders of foreclosed buildings to offer tenants a new lease or allow them to move and collect $10,600. In support, Plaintiff states as follows:

**INTRODUCTION**

In 2013, following the aftermath of the foreclosure crisis of 2008, the City of Chicago enacted an Ordnance called Keep Chicago Renting Ordinance ("KCRO"). The purpose was to dissuade newly foreclosed building owners (lenders) from displacing tenants from their homes. The Ordinance required the lenders to either offer a new lease *or* pay the tenant a relocation fee, not both. Because the Ordinance contained language about a maximum amount of rent that could be charged, it was challenged and struck down. In 2021, the City created an amended Ordinance. This amended Ordinance gave the tenant the power to accept a new twelve-month lease or empty

1

their unit with a check in hand for $10,600, in most instances at least five times more than their monthly rent.

The result of the amended ordinance has the opposite effect of its purpose. The amount of funds incentivizes renters to leave an empty unit, or even sue the lender because the tenant can collect a penalty equal to double the $10,600 relocation fee. In doing the math, the Ordinance is also punitive in nature. In a building with 200 units, if half of the tenants decide they prefer the funds, the owner pays over one million dollars simply because the tenants decided not to renew. The building owner is already at a loss in a foreclosure situation. Lastly, the Ordinance is a taking of private property for a public purpose.

## THE PARTIES

1.      Plaintiff is a Delaware limited liability company which owns the property located at 5200 North Sheridan Road in Chicago, Illinois, County of Cook (the "Property").

2.      Defendant City of Chicago, acting through its Department of Housing (DOH), is a municipal corporation whose main office is located at 121 North LaSalle Street, Room 1006, Chicago, Illinois 60602.

## JURISDICTION AND VENUE

3.      The claims in this action arise under the Fifth Amendment to the United States Constitution, as incorporated against the states by the Fourteenth Amendment, and the Due Process Clause of the Fourteenth Amendment.

4.      This Court has jurisdiction under 42 U.S.C. § 1983 and 28 U.S.C. § 1331.

5.      A remedy is sought under the Declaratory Judgment Act, 28 U.S.C. § 2201 to either strike the Ordinance or order the City to go back to the lender's choice to offer a new lease or a relocation fee, not both.

6.     Venue is proper in this Court because this action concerns private property located in Cook County, Illinois, and a legislative enactment of the City of Chicago, all of which are within the jurisdiction of the Northern District of Illinois.

## STATEMENT OF FACTS

7.     On their face, the tenant payments mandated by the City of Chicago's Keep Chicago Renting Ordinance (Chapter 5-14 Municipal Code of Chicago) take private real property for a public purpose in violation of the U.S. Constitution.

8.     The former KCRO served a public purpose – to dissuade owners of newly foreclosed buildings from displacing tenants from their homes by giving them the option of signing a new lease or paying them $10,600 in relocation expenses.

9.     The amended KCRO does the opposite – for tenants who live at the Plaintiff's building and pay $1,500 per month in rent, it persuades them to move by giving them the option to turn down the lease and, instead, receive seven times their monthly rent to relocate.

10.     The payment provision unconstitutionally seizes private property, unconstitutionally functions as a condition that is unrelated and disproportionate to any impact on society, and imposes an impermissible burden on the lenders who have already suffered thousands and sometimes, millions of dollars in damages due to borrower defaults.

11.     Consequently, the relocation fee provision of the Keep Chicago Renting Ordinance violates the Takings Clause and Due Process Clause of the United States Constitution.

12.     Plaintiff is therefore entitled to equitable relief under 42 U.S.C. § 1983, the Declaratory Judgment Act, and Illinois law, including a preliminary injunction.

**A.      The Original Ordinance**

13.      The original Keep Chicago Renting Ordinance ("Original KCRO" or "Original Ordinance") was enacted in 2013 as part of the aftermath of the foreclosure crisis. *See* **Exhibit A**, Original KCRO, attached.

14.      The Original KCRO required owners of newly foreclosed buildings to either make tenants a good faith offer for a new lease as long as the lease did not exceed a 102% annual rental increase; **or** alternatively, pay a relocation fee of $10,600.[1] *See* 2013 Original KCRO, **Exhibit A** (emphasis added).

15.      In the Original KCRO, if owners wanted to remove tenants they could pay the relocation fee of $10,600. If owners offered a renewal on a tenant's lease, but the tenant didn't accept it, owners did not have to pay the $10,600. The tenant could not receive an offer in good faith, reject it, and still collect the $10,600 relocation fee.

16.      The Original KCRO served its purpose and allowed for "thousands of people stably housed or able to move successfully since the [Original] KCRO's passage."[2]

**B.      The Amended Ordinance.**

17.      Because the Original Ordinance contained a provision that the owner could not raise the tenant's lease offer amount more than 102% annually, it was challenged in the Illinois Court of Appeals as preempting the Illinois Rent Control Preemption Act. *See Rivera v. Bank of New York Mellon*, 2021 IL App (1st) 192188; 50 ILCS 825/5.

---

[1] 5-14-050 Tenant relocation assistance.
(a) The owner of a foreclosed rental property shall pay a one-time relocation assistance fee of $10,600 to a qualified tenant unless the owner offers such tenant the option to renew or extend the tenant's current rental agreement with an annual rental rate that: (1) for the first twelve months of the renewed or extended lease, does not exceed 102% of the qualified tenant's current annual rental rate; and (2) for any twelve-month period thereafter, does not exceed 102% of the immediate prior year's annual rental rate.
[2] *See* Lawyers' Committee for Better Housing article at https://lcbh.org/lcbh-helps-save-the-kcro/.

18.    Since the City of Chicago does not have rent control, through the Appellate Court's decision in *Rivera,* the Original Ordinance was effectively struck down.

19.    As a result of that challenge and "for fear that the new owners will side-step their obligations by offering leases at astronomical rental rates," the City of Chicago's new Keep Chicago Renting Ordinance ("Amended Ordinance" or "Amended KCRO") now gives the tenant the opportunity to refuse to re-sign a lease with the new owner and instead, receive a check in the amount of $10,600.[3] *See* **Exhibit B**, Amended KCRO, attached.

20.    Under the relocation fee provision of the Amended KCRO, if the new owner does not pay the tenant(s) within 7 days of vacating a property, they risk paying double that amount to each tenant for each violation as an additional penalty in addition to the relocation assistance fee.[4] *Id*.

21.    For example, in the event a lender in a newly foreclosed building of 200 tenants is unaware of the amendment due to the ambiguity on its face, and those 200 tenants pay $1,000 each

---

[3] 5-14-050 Qualified tenant relocation assistance.
(a)(1) Except as provided in subsection (a)(2) the owner of a foreclosed rental property shall pay a one-time relocation assistance fee of $10,600 to a qualified tenant unless the owner negotiates in good faith for a new rental agreement that lasts at least 12 months, offers such qualified tenant a new rental agreement according to these terms, and the qualified tenant accepts the owner's offer in writing.
(2) For any unlawful hazardous unit or unlawful conversion occupied by a qualified tenant, the owner shall pay a one-time relocation assistance fee of $10,600 to the qualified tenant unless the owner in good faith offers, and the qualified tenant accepts the owner's offer of, a rental agreement at a replacement rental unit. The replacement rental unit may be located either in the same foreclosed rental property or at another location.
[4] 5-14-050 Qualified tenant relocation assistance.
(b) The owner shall pay the relocation fee to the qualified tenant no later than seven days after the day of complete vacation of the rental unit by the qualified tenant.
                                                * * *
(f) In addition to any other fine or penalty provided and in addition to a relocation assistance fee, if an owner fails to comply with this section, the qualified tenant shall be awarded damages in an amount equal to two times the relocation assistance fee for each violation of this section. This section does not preclude the qualified tenant from recovering other damages to which the qualified tenant may be entitled under this chapter.

month in rent and see it as a windfall, that lender is looking at paying an additional two to four million dollars for having to foreclose that building and take ownership.

22.     The general purpose and intent from the Original to the Amended Ordinance never changed: a key component has always been to prevent vacancies in foreclosed residential buildings.

> It is the purpose of this ordinance, in order to protect, maintain, and improve foreclosed rental property, preserve rental housing stock, mitigate losses to area property values, and avoid neighborhood destabilization due to foreclosure, **to prevent vacant foreclosed residential buildings and preserve tenancies in these properties**.

5-14-010, Title, Purpose and Scope. *See* **Exhibit A,** Old KCRO (emphasis added).

> In order to protect and promote the health, safety, and welfare of its residents and mitigate the damaging effects on our communities of foreclosures which individually are catastrophic for the families and tenants who lose their homes, and collectively can economically destabilize an otherwise healthy neighborhood, by causing building abandonment, excessive vacancy, declines in property values, and a perception of a neighborhood as being unworthy of investment, **it is the purpose of this chapter and the policy of the city to preserve, protect, maintain, improve rental property and prevent occupied buildings from becoming vacant after foreclosures.**

5-14-010. Title, purpose and scope. *See* **Exhibit B**, Amended KCRO (emphasis added).

23.     The Amended Ordinance's purpose seems to encourage the opposite – emptying buildings by: (i) allowing tenants to break their lease without any repercussion; (ii) incentivizing tenants to take advantage of the payments to secure a windfall; and (iii) resulting in lenders foreclosing out all tenants so they do not have to pay insurmountable fees. In any given scenario, the purpose of Original Ordinance to keep people in their homes is no longer being served.

24.     The Amended KCRO is overbroad. The so-called relocation fee provision is not limited in any rational way to cover the scenarios listed in Section 5-14-010; instead, it provides the relocation fee in almost every circumstance except one: where the tenant opts to renew their lease.

25. Most significantly, however, the Amended Ordinance can be interpreted to allow for tenants of a foreclosed property to be entitled to the relocation fee of $10,600.00 (5-14-050 Qualified tenant relocation assistance. *See* **Exhibit B**, Amended KCRO) whether the building owner offers them a new lease or not. Under that interpretation, if the tenant refuses to accept the landlord's good faith offer to sign a new lease for the property, the tenant is still entitled to the $10,600 relocation fee. This directly contradicts the stated intention of the Amended Ordinance and creates constitutional vagueness concerns. Further, this will incentivize tenants to reject a good faith offer just to collect the relocation fee, which will encourage post-foreclosure vacancies rather than "***prevent occupied buildings from becoming vacant after foreclosures***." 5-14-010 Title, purpose and scope. *See* **Exhibit B**, Amended KCRO

**C.** **Plaintiff's Property.**

26. On September 23, 2022, Plaintiff's predecessors-in-interest in the Property filed a foreclosure action in the Chancery Division of the Cook County against the former owner of the Property. *See MF1 2020-FL4 LTD and MF1 Capital Seller IV LLC, etc. v. North Sheridan Property Investor, LLC, et al.* Case No. 2022 CH 09442.

27. The owner failed to pay the monthly mortgage payment and ignored building code violations.

28. At the inception of the case, the Chancery Court appointed a receiver to take over the management of the Property and remedy the various code violations.

29. Plaintiff ultimately took control of the Property through a Sherriff's Deed dated February 9, 2024.

**THE AMENDED ORDINANCE IS AMBIGUOUS**

30. On its face, the Original and Amended Ordinances do not appear to be different other than the provision regarding the rental increase of 102%.

> Original Ordinance: 5-14-050 Tenant relocation assistance.
> (a) The owner of a foreclosed rental property shall pay a one-time relocation assistance fee of $10,600 to a qualified tenant **unless** the owner offers such tenant the option to renew or extend the tenant's current rental agreement with an annual rental rate that: (1) for the first twelve months of the renewed or extended lease, does not exceed 102% of the qualified tenant's current annual rental rate; and (2) for any twelve-month period thereafter, does not exceed 102% of the immediate prior year's annual rental rate.

31. The above Original Ordinance gave an alternative for the new owner following a foreclosure. Either the new owner offers a new lease or pays the relocation fee. The Amended Ordinance purportedly gives the tenant the option to turn down the lease, vacate their unit, and take the relocation fee.

> 5-14-050 Qualified tenant relocation assistance.
> (a)(1) Except as provided in subsection (a)(2) the owner of a foreclosed rental property shall pay a one-time relocation assistance fee of $10,600 to a qualified tenant **unless** the owner negotiates in good faith for a new rental agreement that lasts at least 12 months, offers such qualified tenant a new rental agreement according to these terms, and the qualified tenant accepts the owner's offer in writing.

32. There is no logical way of interpreting the Amended Ordinance other than to assume it is an "either" "or" situation.

33. Moreover, in researching the Ordinance's history and purpose, one would have no reason to interpret the Ordinance in any other way than its stated purpose.

## **APPLICATION OF THE AMENDED ORDINANCE**

34. Pursuant to the Amended Ordinance, the owner of a foreclosed rental property shall register such property within 30 days of ownership with the Commissioner. *See* **Exhibit B**, 5-14-060 (a) Registration of foreclosed property.

35. The owner of a foreclosed rental property is also required to provide notice to occupants as follows:

> No later than 21 days after a person becomes the owner of a foreclosed rental property, the owner shall make a good faith effort to ascertain the identities and addresses of all occupants of the rental units in the foreclosed rental property and notify, in writing, all occupants of such rental units that, under certain circumstances, the occupants may be eligible for relocation assistance. The notice shall be given in Arabic, Chinese (simplified), Chinese (traditional), English, Filipino, Hindi, Korean, Polish, and Spanish and be as follows:

>> "This is Not a Notice To Vacate The Premises. You may wish to contact a lawyer or your local legal aid or housing counseling agency to discuss any right that you may have.

>> Pursuant to the City of Chicago's Keep Chicago Renting Ordinance, if you are a qualified tenant you may be eligible for relocation assistance in the amount of $10,600 unless the owner negotiates in good faith for a new rental agreement, offer you a new rental agreement, and you accept the offer, in writing for a new rental agreement. **YOU MAY REJECT THE OFFER OF A NEW RENTAL AGREEMENT AND STILL RECEIVE $10,600 IN RELOCATION ASSISTANCE.**

>> If you are eligible as a qualified tenant and the owner fails to pay you the relocation assistance that is due, you may bring a private cause of action in a court of competent jurisdiction seeking compliance with the Keep Chicago Renting Ordinance, Chapter 5-14 of the Municipal Code of Chicago, and the prevailing plaintiff shall be entitled to recover, in addition to any other remedy available, his damages and reasonable attorney's fees.

>> You may go to the City of Chicago Department of Housing's website for additional information regarding your rights and obligations under the Ordinance or phone the City of Chicago's 311 Service Center to file a complaint."

5-14-040, Notice to occupants. *See* **Exhibit B,** Amended KCRO.

36. On February 29, 2024, Plaintiff sent out the following Notice of Your Rights to the tenants they understood were "qualified tenants" under the Amended Ordinance.

9

**NOTICE OF YOUR RIGHTS**

This Notice is pursuant to section 5-14-040 of the Municipal Code of Chicago.

**THIS IS NOT A NOTICE TO VACATE THE PREMISES.** You may wish to contact a lawyer or your local legal aid or housing counseling agency to discuss any right that you may have.

Under the City of Chicago's Keep Chicago Renting Ordinance, if you are a qualified tenant, you have to right to receive a $10,600 in relocation assistance if you are asked to leave your unit, or receive an offer to renew your rental agreement for at least 12 months. If you receive an offer to renew your rental agreement and are a qualified tenant, you have the right to reject the offer and receive $10,600 in relocation assistance.

If you are eligible as a qualified tenant and the owner fails to pay you the relocation assistance that is due, you may bring a private cause of action in court under the Keep Chicago Renting Ordinance.

The name, address and telephone number of the owner, property manager or owner's agent who is responsible for the foreclosed rental property is as follows:

| | |
|---|---|
| Name: | |
| Address: | |
| Telephone Number: | |

37.     Plaintiff obtained the above notice through the City of Chicago's website.[5]

38.     The next section of the Amended Ordinance states,

[N]o later than 21 days after the date upon which the tenant returns or should have returned the Tenant Information Disclosure Form pursuant to Section 5-14-040, the owner shall: (i) send a written notice to a qualified tenant advising the qualified tenant that the owner is paying the required relocation fee; **or** (ii) negotiate in good faith and offer to the qualified tenant a new rental agreement or rental agreement for a replacement rental unit, whichever is applicable, which the tenant accepts in writing. All notices or offers shall clearly show the date the offer or notice was sent.

5-14-050 Qualified tenant relocation assistance. *See* **Exhibit B**, Amended KCRO (emphasis added).

39.     The Amended Ordinance also states that if a tenant does not return the form, it shall

not affect the tenant's right to the payment of a relocation fee. *Id.*

---

[5] *See* https://www.chicago.gov/city/en/depts/doh/provdrs/renters/svcs/keep-chicago-renting.html.

10

40. There is no indication as to how many times the owner needs to continue trying or how long the tenant can avoid returning the form. Although there is a "good faith" clause within the Amended Ordinance, it seems to leave an unending right for the tenant to show up with the form and request to break his or her lease and be given a relocation fee of $10,600, a payment that must be paid to the tenant within seven days. *Id*.

41. Given the purpose, intent, history, case law, and writing of the Original and Amended Ordinance, during the relevant time period, the Plaintiff understood that its duty was to offer, in good faith, a new twelve-month lease to all qualified tenants or give those tenants $10,600 to vacate the premises, but not both.

**THE TENANTS**

42. Given the ambiguity and vagueness of the statute, it is almost impossible for the new owners to navigate how far a tenant can take the Ordinance.

43. As of the date of this filing, Plaintiff is facing two City violations, the threat of five tenant lawsuits, and a possible class action.

**A. Tenant A**

44. On or about April 28, 2023, Tenant A entered into a lease at the subject Property.

45. In early March, 2024, Tenant A visited the Property's office to inform management that she was not renewing her lease.

46. Tenant A's lease was to end on April 30, 2024, but she moved on March 31, 2024.

47. Her monthly rent was $1,275.

48. On April 19, 2024, the City of Chicago filed an Ordinance Violation against Plaintiff on behalf of Tenant A stating "the respondent failed to send a written notice that the owner is paying the relocation fee to [Tenant A] within 21 days after receipt of an offer for a new rental

agreement was made and declined"; and (ii) "the respondent failed to include the required statement in Bold Letters," as part of the written notice sent to Tenant A. *See* **Exhibit C**.

49. The form Plaintiff sent to Tenant A came from the City's website which did not contain bold letters; yet, the City is the Plaintiff in the ordinance violation matter. *Id.*

50. This tenant did not even live at the building for one full year.

51. A continuation for a hearing was filed on June 12, 2024, with the new hearing set for July 17, 2024.

52. On June 6, 2024, Plaintiff received the attached letter stating that because it did not offer to give Tenant A $10,600 for moving out a month before her lease expired, the Plaintiff is being informed that "[i]n litigation, the above-mentioned KCRO violations would subject your client to the penalty of $53,000 plus our client's attorneys' fees along with the fees accrued by your client in defending the case." *See* **Exhibit D**.

53. For just one tenant in a building of over 220 tenants, the Plaintiff is being threatened with having to pay over $50,000.

**B.     Tenant B**

54. Based upon information and belief, Tenant B moved into a unit at the Property on or about December 1, 2021.

55. To Plaintiff's knowledge, Tenant B does not have a written lease agreement at the Property, as Plaintiff never received a copy of such a lease upon foreclosure and Tenant B was unable to produce one.

56. Tenant B was paying $1,325 per month in rent.

57. Despite not being able to locate a lease, on March 25, 2024, Plaintiff offered Tenant B a twelve-month lease.

12

58. On February 29, 2024, Tenant B sent the "Notice of Your Rights" form back to Plaintiff with a handwritten request for a $10,600 relocation fee.

59. On April 7, 2024, Plaintiff emailed Tenant B acknowledging his refusal to accept a lease to which Tenant B responded questioning why he did not qualify for the relocation fee of $10,600.

**C. Tenant C**

60. Tenant C moved into a unit at the Property on or about May 28, 2023, and her lease ended on May 31, 2024.

61. Tenant C was paying $1,595 per month in rent.

62. Tenant C moved out of the Property at the end of her lease.

63. Tenant C elected not to renew her lease but is demanding $10,600 in relocation expense despite her departure at the end of her lease term.

**D. Tenant D**

64. Tenant D had been living in a unit on the Property since January of 2023.

65. Neither Plaintiff nor Tenant D were able to locate a written lease.

66. Tenant D was living at the Property as a month-to-month tenant paying $1,400 per month in rent.

67. On February 29, 2024, Tenant D was given the Notice of Your Rights Form.

68. On March 3, 2024, Tenant D returned the Notice of Your Rights Form.

69. Despite not having a written lease, on March 25, 2024, the Plaintiff made a good faith offer to Tenant D to renew his lease for a twelve-month period at his then-current rental rate.

13

70. On April 1, 2024, Tenant D sent an email to the Property's management noting that was he was rejecting the good faith offer. He demanded the $10,600 relocation expense instead. *See* **Exhibit E**, Tenant D emails, attached.

71. On April 8, 2024, Tenant D sent an email to the Property management team requesting the relocation fee. *Id*.

**E.      Tenant E**

72. Tenant E moved into a unit located on the Property on or about May 1, 2023 and his lease expired April 30, 2024.

73. Tenant E was paying $1,525 per month in rent.

74. As of April 1, 2024, Tenant E had an outstanding rent balance of $5,400.00.

75. Because Tenant E was in default on his lease, Plaintiff did not issue him a good faith offer for a twelve-month renewal.

76. On April 10, 2024, Tenant E sent an email to Plaintiff stating that he was moving out of the Property because he received a five-day notice of non-payment. He further stated that he would pay his full outstanding balance under protest but that he was not foregoing his right to sue:

> I am making this payment without waiver or release of any rights I have, to raise affirmative defenses and/or other claims related to the payment of this amount under protest and the reduced value of my tenancy, as well as any other claims I may have under the law. I do not waive or release any rights I have, to bring a civil lawsuit against Berkshire or BBLI Edison for claims related to the reduced value of my tenancy, claims pursuant to the Chicago Residential Landlord and Tenant Ordinance, Keep Chicago Renting Ordinance, consumer protection laws or any other laws. I have made my payment to the onsite management office.

**Exhibit F**, Tenant E Emails, attached hereto.

**INJUNCTIVE RELIEF ALLEGATIONS**

77. Plaintiff lacks any adequate remedy at law to address the unlawful and unconstitutional taking and deprivation of its property through the City of Chicago's enforcement of the relocation fee provision of the Amended Ordinance.

78. There is a substantial likelihood that Plaintiff will succeed on the merits of its claims concerning the relocation fee provision of the Amended Ordinance, namely that it unconstitutionally takes and seizes private property and deprives individuals of their property in violation of the Constitution.

79. Plaintiff is immediately required to make the so-called relocation assistance payments required by the relocation fee provision of the Amended Ordinance or must otherwise suffer the consequences.

80. Plaintiff cannot avoid those events without judicial relief and will suffer irreparable injury absent a preliminary injunction restraining the City of Chicago from enforcing the relocation fee provision of the Amended Ordinance against it.

81. The impending injury to Plaintiff in taking its property for the private use of tenants outweighs any harm that an injunction might cause to the City of Chicago.

82. The public interest is advanced, not harmed, by enjoining the City of Chicago from enforcing the unconstitutional and illegal relocation fee provision of the Amended Ordinance.

**COUNT ONE**
**<u>Writ of Mandamus Invalidating the Amended Ordinance</u>**

83. Plaintiff hereby re-alleges each and every allegation contained in the prior paragraphs numbered 1 through 82 as if fully set forth herein.

84. Plaintiff has a beneficial interest in ensuring that the relocation fee provision of the Amended KCRO is found to be invalid as written and therefore void, and that the City of Chicago

15

is ordered to rescind the relocation fee provision of the Amended Ordinance and bar its enforcement so that Plaintiff and other property owners' rights are not infringed.

85. Plaintiff lacks a plain, speedy, and/or adequate remedy in the ordinary course of law to prevent enforcement of the Amended KCRO's relocation fee provision, which makes writ relief necessary.

## COUNT TWO
## Declaratory Relief Under 28 U.S.C. §2201

86. Plaintiff hereby re-alleges each and every allegation contained in the prior paragraphs numbered 1 through 82 as if fully set forth herein.

87. A controversy exists among the parties to this action. Defendant's position is that the relocation fee provision of the Amended KCRO is constitutional and in all regards valid. Plaintiff contends that it is unlawful, penal in nature, and unenforceable as such.

88. Under the Fifth and Fourteenth Amendments, a plaintiff has the right to be free from a taking of their private property for a private purpose or from laws taking or seizing such property for a public purpose on unreasonable grounds without a method for just compensation.

89. The Fourteenth Amendment's Due Process Clause provides a plaintiff with the right to be free from any irrational, illegitimate deprivation of a plaintiff's property.

90. The City of Chicago has enacted and enforces the relocation fee provision of the Amended Ordinance, which has the effect of taking private property for a public purpose without any rational or reasonable basis.

91. If the relocation fee provision of the Amended Ordinance serves any public purpose at all, it does so by taking private property without any method to compensate the effected property owner.

16

92. There is a justiciable controversy in this case as to whether the relocation fee provision of the Amended Ordinance violates the U.S. Constitution's Fifth and Fourteenth Amendments, both facially and as applied to Plaintiff in this case.

93. Plaintiff desires a judicial determination and declaration of the parties' respective rights and duties with respect to the validity and enforceability of the relocation fee provision of the Amended KCRO.

94. Such a declaration is necessary and proper to allow Plaintiff to ascertain its rights and duties without being subject to liability.

95. A declaratory judgment on the constitutionality of the relocation fee provision of the Amended Ordinance, including whether it has the effect of improperly taking or depriving individuals (such as Plaintiff) of their property, will clarify the legal relationship between Plaintiff on the one hand and the City of Chicago Department of Housing on the other, with respect to the enforcement of the relocation fee provision of the Amended Ordinance.

96. A declaratory judgment with respect to the relocation fee provision of the Amended Ordinance's constitutionality and/or legality will relieve the parties herein from the uncertainty giving rise to this Complaint.

97. Plaintiff seeks a determination of the following questions:

    a. Is the relocation fee provision of the Amended KCRO impermissibly penal in nature?

    b. Is the relocation fee provision of the Amended KCRO invalid as improperly ambiguous and thus void as vague?

    c. Is the relocation fee provision of the Amended KCRO constitutionally invalid as permitting a taking for a public purpose without just compensation?

    d. Is the relocation fee provision of the Amended KCRO constitutionally invalid as permitting an exaction and taking of private property?

e.     Is the relocation fee provision of the Amended KCRO constitutionally invalid as permitting a facial due process violation?

f.     Is the relocation fee provision of the Amended KCRO constitutionally invalid as permitting a due process violation as applied to Plaintiff?

## COUNT THREE
### Taking for a Private Purpose (Facial) Under 42 U.S.C. § 1983

98.     Plaintiff hereby re-alleges each and every allegation contained in the prior paragraphs numbered 1 through 82 as if fully set forth herein.

99.     The Public Use Clause of the Fifth Amendment establishes that the government, including local governments, cannot take private property for a private purpose.

100.     The relocation fee provision of the Amended KCRO requires owners of rental properties such as Plaintiff to transfer money to other private parties, in this instance to tenants of the Property.

101.     The relocation fee provision of the Amended KCRO contains no limitations or conditions on the tenants' use of the money once received from a property owner.

102.     This means that tenants can use the money from property owners under the relocation fee provision of the Amended KCRO for any private purpose of their choosing, since there is no requirement that the funds are actually used for relocation expenses or to pay rent.

103.     Thus, the relocation fee provision of the Amended KCRO benefits private parties rather than the general public, and this private benefit to tenants in the form of payment by rental property owners clearly outbalances any potential *de minimis* benefit to the general public.

104.     The relocation fee provision of the Amended KCRO was intended to benefit private parties, namely tenants.

105.     The relocation fee provision of the Amended KCRO serves this private purpose as well as a private use, which violates the Public Use Clause.

18

106.    This violation of the Public Use Clause imposed by the relocation fee provision of the Amended KCRO occurs under color of Illinois state law and thus violates 42 U.S.C. § 1983.

107.    Plaintiff does not need to first exhaust its administrative remedies prior to bringing this facial Public Use claim.

108.    This claim is ripe for resolution in this Court at this time.

**COUNT FOUR**
**Exaction and Taking of Private Property (Facial) Under 42 U.S.C. § 1983**

109.    Plaintiff hereby re-alleges each and every allegation contained in the prior paragraphs numbered 1 through 82 as if fully set forth herein.

110.    The relocation fee provision of the Amended KCRO places conditions on Plaintiff's ability to exercise its property rights, namely its ability to choose not to extend a new lease and/or use the property for non-rental purposes, on payment of money to current tenants of the Property.

111.    Money is property that is protected by the Fifth Amendment of the U.S. Constitution.

112.    If the City of Chicago demanded that Plaintiff give its money to displaced tenants, it would be responsible for a per se physical taking of Plaintiff's property in violation of the Constitution.

113.    Under applicable federal case law, government agencies are only permitted to exact funds from property owners as a condition of allowing them to exercise their property rights where (i) the exaction limits a public impact directly emanating from the property owners' exercise of their rights and (ii) the exact has a rough proportionality, both in nature and degree, to that same public impact. *See, e.g.*, *Dolan v. City of Tigard*, 512 U.S. 374 (1994).

114. The tenant payment provision bears no relation to and fails to address any purported impact arising from property owners removing rental units from the market or otherwise deciding not to renew tenant leases.

115. The relocation fee provision of the Amended KCRO is not proportionate, whether in nature or degree, to any purported public impact.

116. Thus, the relocation fee provision of the Amended KCRO has the effect of imposing an unconstitutional condition which exacts and takes private property from property owners in violation of prevailing federal case law.

117. This exaction imposed by the relocation fee provision of the Amended KCRO occurs under color of Illinois state law and thus violates 42 U.S.C. § 1983.

118. Plaintiff's claim seeks only equitable relief sufficient to restrain the City of Chicago's enforcement of this improper monetary exaction imposed by the relocation fee provision of the Amended KCRO.

119. This claim is ripe for resolution in this Court at this time.

**COUNT FIVE**
**Violation of Due Process (Facial) Under 42 U.S.C. § 1983**

120. Plaintiff hereby re-alleges each and every allegation contained in the prior paragraphs numbered 1 through 81 as if fully set forth herein.

121. Rental property owners like Plaintiff have a statutory and common law property right to use their property as they desire and to remove their property from the rental market when they desire.

122. The relocation fee provision of the Amended KCRO requires rental property owners to offer a twelve-month lease, which takes away the property owners' ability to regain

possession of their property, or otherwise to offer each tenant $10,600 without putting any conditions on tenants' use of the payments.

123.    Tenants are not required to use these funds to cover relocation expenses or to pay for rent.

124.    The real purpose of the relocation fee provision of the Amended KCRO is to penalize property owners for exercising their state law property right to remove their units from the rental market and/or to rent to new tenants. Instead, property owners are forced to keep such units on the market for a minimum of twelve months and to offer renewals to all tenants regardless of past conduct.

125.    The payment provision in the relocation fee provision of the Amended KCRO does not rationally advance any legitimate governmental interest and places a huge burden on lenders who have already spent thousands (if not more) in legal fees to foreclose their property from a defaulted borrower.

126.    The relocation fee provision of the Amended KCRO is irrational, unfair, and illegitimate.

127.    The relocation fee provision of the Amended KCRO arbitrarily, irrationally, and unfairly deprives rental property owners like Plaintiff of their property rights.

128.    This due process violation imposed by the relocation fee provision of the Amended KCRO occurs under color of Illinois state law and thus violates 42 U.S.C. § 1983.

129.    Plaintiff does not need to first exhaust its administrative remedies prior to bringing this claim.

130.    This claim is ripe for resolution in this Court at this time.

21

**COUNT SIX**
**Violation of Due Process (As Applied) Claim Under 42 U.S.C. § 1983**

131.    Plaintiff hereby re-alleges each and every allegation contained in the prior paragraphs numbered 1 through 81 as if fully set forth herein.

132.    Plaintiff has a property right, under state law, to withdraw its rental units from the rental market and to use and enjoy its property as it wishes.

133.    Plaintiff is being forced to pay money to tenants under the relocation fee provision of the Amended KCRO.

134.    Requiring Plaintiff to offer each tenant a twelve-month lease renewal takes away Plaintiff's vested right to regain possession of the units in the Property it owns without incurring a substantial financial penalty.

135.    Thus, the Amended KCRO relocation fee provision arbitrarily, irrationally, and illegitimately deprives the Plaintiff of its protected property right with respect to the rental units.

136.    This due process violation imposed by the relocation fee provision of the Amended KCRO occurs under color of Illinois state law and thus violates 42 U.S.C. § 1983.

**RELIEF SOUGHT**

WHEREFORE, Plaintiff prays for judgment from this Court as follows:

A.    A writ of mandamus or other appropriate relief directing and commanding the City of Chicago not to enforce the relocation fee provision of the Amended Ordinance, to rescind the relocation fee provision of the Amended Ordinance, and to refrain from taking any action against any property owner who fails to comply with it;

B.    A writ of mandamus commanding the City of Chicago not to allow anyone else to enforce the relocation fee provision of the Amended Ordinance;

22

C.     A stay of the relocation fee provision of the Amended Ordinance pending a determination of the merits;

D.     A declaratory judgment that the relocation fee provision of the Amended Ordinance is an improper penalty;

E.     A declaratory judgment that the relocation fee provision of the Amended Ordinance is void as vague;

F.     A declaratory judgment that the relocation fee provision of the Amended Ordinance violates the Public Use Clause of the Fifth Amendment on its face and is therefore invalid and unenforceable;

G.     A declaratory judgment that the relocation fee provision of the Amended Ordinance violates the Takings Clause of the Fifth Amendment on its face and is therefore invalid and unenforceable;

H.     A declaratory judgment that the relocation fee provision of the Amended Ordinance violates the Due Process Clause of the Fourteenth Amendment on its face and is therefore invalid and unenforceable;

I.     An award of reasonable attorneys' fees for bringing and maintaining this action, including under 42 U.S.C. § 1988; and

J.     An award of costs of suit pursuant to Federal Rule of Civil Procedure 54(d); and

K.     An award of any other and further relief that the Court deems just and proper under the circumstances of this case.

Respectfully submitted,

BBLI EDISON, LLC

By: */s/ Cara M. Houck*
　　　　　One of its attorneys

Cara M. Houck
Holland & Knight LLP
150 N. Riverside Plaza, Suite 2700
Chicago, IL 60606
(312) 263-3600
IL I.D. No. 06239163
*cara.houck@hklaw.com*