## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

BBLI EDISON LLC, a Delaware
limited liability company;

Plaintiff,

v.

CITY OF CHICAGO,

Defendant.

Case No. 24-cv-04925

Judge Mary M. Rowland
Judge Young B. Kim

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff BBLI Edison, LLC, ("BBLI") moved for a temporary restraining order and preliminary injunction [7] prohibiting Defendant City of Chicago ("City") from enforcing a provision of the Keep Chicago Renting Ordinance, Municipal Code of Chicago, Ill. Chapter 5-14, relating to relocation fees. The City opposed BBLI's motion. [15]. For the reasons stated herein, BBLI's motion is denied without need for an evidentiary hearing.

## BACKGROUND

In 2013, in the wake of the 2008 foreclosure crisis, the City of Chicago enacted the Keep Chicago Renting Ordinance (the "Original KCRO"). [8 ¶ 13]. The Ordinance aimed to protect renters living in foreclosed residential properties and to prevent vacancies in those buildings. Original KCRO § 5-14-010. Under the Original KCRO, owners of recently foreclosed properties were required either to make a good faith offer to renew the lease of current tenants at a rate not to exceed 102% of the current rent or pay a $10,600 relocation fee to the tenants. *Id.* § 5-14-050. An Illinois appellate

1

court struck down the Original KCRO when it determined the entire Ordinance was preempted by the Illinois Rent Control Preemption Act (50 ILCS 825/1 et seq. (West 2016)). *Rivera v. Bank of New York Mellon*, 2021 IL App (1st) 192188.

On July 21, 2021, the Chicago City Council unanimously repealed the Original KCRO and enacted a new version (the "Amended KCRO"). *See* Amended KCRO. Like the Original Ordinance, the new version was implemented to preserve and improve rental properties and to prevent occupied buildings from becoming vacant after foreclosure. *Id.* § 5-14-010. The Amended KCRO states, in part,

> the owner of a foreclosed rental property shall pay a one-time relocation assistance fee of $10,600 to a qualified tenant unless the owner negotiates in good faith for a new rental agreement that lasts at least 12 months, offers such qualified tenant a new rental agreement according to these terms, and the qualified tenant accepts the owner's offer in writing.

*Id.* § 5-14-050(a)(1). If an owner fails to comply with its relocation assistance obligations under the Ordinance, a qualified tenant is to be awarded damages equal to two times the amount of the relocation fee per violation. *Id.* § 5-14-050(f). The Amended KCRO also requires owners of newly foreclosed properties to notify the occupants of the rental units in the building that they may be entitled to relocation assistance. *Id.* § 5-14-040.

Plaintiff BBLI, a Delaware limited liability company, owns an apartment building with over 200 rental units and first floor retail units located at 5200 North Sheridan Road in Chicago, Illinois (the "Property"). [7-1 ¶¶ 5–6, 8]. On February 9, 2024, BBLI took ownership of the Property after its predecessors-in-interest filed a foreclosure action against the former owner of the Property. *Id.* ¶¶ 6–7. The former

owner allegedly failed to pay monthly mortgage payments and ignored building code violations. [8 ¶ 27]; *see also* [15-1]. The Property has been cited for additional building code violations under BBLI's ownership. *See City of Chicago v. BBLI Edison, LLC*, 21 M1 400491 (Cir. Ct. Cook Cty.), [15-1].

Pursuant to § 5-14-040 of the Amended KCRO, BBLI sent notice to the Property's tenants of their rights as renters under the Amended KCRO and posted similar notices in the building. [7-1 ¶¶ 10–11]. Multiple tenants elected to receive the relocation fee and are attempting to collect payment from BBLI. *Id.* ¶ 12.[1] On June 6, 2024, some of the tenants at the Property filed a putative Class Action Complaint against BBLI. *Anthony Cervantes, et al. v. BBLI Edison LLC, et al.*, Case No. 2024 CH 05360 (Cir. Ct. Cook Cty.). BBLI was served with the Class Action Complaint on June 18, 2024, [7-1 ¶ 55], and the class action was removed to the Northern District of Illinois on July 18, 2024, *Anthony Cervantes et al. v. BBLI Edison LLC et al.,* Case No. 1:24-cv-06098 (N.D. Ill.). Additionally, the City issued a notice of ordinance violation against BBLI. [7-1 ¶ 18]. The class case currently is pending and, upon information and belief, the administrative proceedings are ongoing as well.

BBLI brought this suit against the City alleging (1) procedural due process violations because it did not receive adequate notice of the of the Amended KCRO or opportunity to participate in the legislative process and because the Ordinance is ambiguous and vague, [7 at 7–9]; (2) that the Amended KCRO is "arbitrary" and thus violates substantive due process, [*id.* at 9–10]; (3) that the Amended KCRO is an

---

[1] BBLI did not allege and did not submit any evidence of tenants accepting offers to renew their leases. *See* [7-1].

unconstitutional taking [*id.* at 10–12]; and (4) that the Amended KCRO treats foreclosing lenders differently than other lenders and thus violates the Equal Protection Clause [*id.* at 12]. Before the Court now is BBLI's motion for a temporary restraining order and preliminary injunction [7]. BBLI seeks preliminary equitable relief prohibiting the City from enforcing the provisions of the Amended KCRO relating to relocation fees.

## STANDARD

"A preliminary injunction is an extraordinary remedy." *Whitaker v. Kenosha Unified Sch. Dist. No. 1 Bd. of Educ.*, 858 F.3d 1034, 1044 (7th Cir. 2017). *See also Orr v. Shicker*, 953 F.3d 490, 501 (7th Cir. 2020) ("a preliminary injunction is an exercise of a very far-reaching power, never to be indulged [] except in a case clearly demanding it.") (cleaned up).

The party seeking a preliminary injunction must make an initial threshold showing that: (1) it has some likelihood of succeeding on the merits; (2) it will suffer irreparable harm if the injunction is not granted; and (3) traditional legal remedies would be inadequate. *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of the U.S.A., Inc.*, 549 F.3d 1079, 1086 (7th Cir. 2008). *See also Illinois Republican Party v. Pritzker*, 973 F.3d 760, 763 (7th Cir. 2020). Demonstrating a likelihood of success is "a significant burden," though "at such a preliminary stage, the applicant need not show that it definitely will win the case." *Id.* (noting that the "better than negligible" standard has been retired). "A 'strong' showing thus does not mean proof by a preponderance…[b]ut it normally includes a demonstration of how the applicant

4

proposes to prove the key elements of its case." *Id*. If the moving party fails to demonstrate "any one of the[] three threshold requirements, [the court] must deny the injunction." *Girl Scouts of Manitou,* 549 F.3d at 1086.

If the moving party makes the initial showing, the court then balances the irreparable harm that the moving party would endure without a preliminary injunction against any irreparable harm the nonmoving party would suffer if the court were to grant the requested relief. *Id*. "This Circuit employs a sliding scale approach for this balancing: if a plaintiff is more likely to win, the balance of harms can weigh less heavily in its favor, but the less likely a plaintiff is to win the more that balance would need to weigh in its favor." *GEFT Outdoors, LLC v. City of Westfield*, 922 F.3d 357, 364 (7th Cir. 2019), cert. denied sub nom. 140 S. Ct. 268, 205 L. Ed. 2d 137 (2019) (internal citations and quotations omitted). Finally, the court asks "whether the preliminary injunction is in the public interest, which entails taking into account any effects on non-parties." *Courthouse News Serv. v. Brown*, 908 F.3d 1063, 1068 (7th Cir. 2018). "Ultimately, the moving party bears the burden of showing that a preliminary injunction is warranted." *Id*.[2]

## ANALYSIS

### I. Likelihood of Success on the Merits

To succeed in its attempt to enjoin the Amended KCRO, BBLI must show that it has a "strong" chance of success on the merits of at least one of its claims. *Illinois Republican Party*, 973 F.3d 763. Although BBLI need not show that it definitely will

---

[2] *See also Inventus Power, Inc. v. Shenzhen Ace Battery Co.*, 2020 WL 3960451, at *4 (N.D. Ill. July 13, 2020) (standard for issuing a TRO is the same as for preliminary injunction).

win the case, this threshold showing is "a significant burden." *Id*. BBLI has not shown a strong likelihood of success on the merits of any of its claims.

### a. Procedural Due Process

BBLI asserts the Amended KCRO violates its procedural due process rights. [7 at 7–9]. *First*, BBLI contends it did not have notice or opportunity to object to the Amended Ordinance and is unaware of any efforts to notify interested parties of City Council hearings regarding the Ordinance. [*Id*. at 7–8]. The issue on the merits is whether the due process BBLI received fell short of minimum constitutional requirements.

The minimum procedural protections the Due Process Clause requires differ based on context. *See Mathews v. Eldridge*, 424 U.S. 319, 334 (1976) ("Due process is flexible and calls for such procedural protections as the particular situation demands.") (cleaned up). When examining due process rights, the Supreme Court has long distinguished between legislative and adjudicative action. *See, e.g., Bi-Metallic Inv. Co. v. State Bd. of Equalization*, 239 U.S. 441, 445–46 (1915). When legislative actions are challenged, like here, the interested parties are "not entitled to any process beyond that provided by the legislative process." *Bi-Metallic*, 239 U.S. at 445 ("General statutes within the state power are passed that affect the person or property of individuals, sometimes to the point of ruin, without giving them a chance to be heard. Their rights are protected in the only way that they can be in a complex society, by their power, immediate or remote, over those who make the rule."); *Protect Our Parks, Inc. v. Chicago Park Dist.*, 971 F.3d 722, 738 (7th Cir. 2020) ("legislative

determination provides all the process that is due") (quoting *Dibble v. Quinn*, 793 F.3d 803, 809 (7th Cir. 2015)).

Even BBLI acknowledges where "formal notice might not be explicitly required by the law, public hearings and the enactment of ordinances serve as a procedural mechanism where public input is considered before final decisions are made." [16 at 2]. BBLI argues "[n]o such process happened with [the Amended] KCRO," but that assertion is belied by BBLI's own statements. A public hearing was held regarding the Amended Ordinance on July 14, 2021. *See* [7 at 8]. The record is devoid of any evidence or allegations that the City did not follow appropriate legislative procedures, including regarding public hearings.

BBLI contends the City could have provided notice of the Amended KCRO to lenders without significant burden. [7 at 8; 16 at 3]. But notice of the Amended KCRO, which implicates any mortgage holder that might someday foreclose on a residential property, is easily distinguishable from the cases BBLI cites, which involved actual notice to discrete properties affected by zoning ordinances. *Cf. Passalino v. City of Zion*, 237 Ill.2d 118 (2010) (zoning change affected 85 parcels of land); *Am. Oil Corp. v. City of Chicago*, 29 Ill. App. 3d 988 (1975) (amendment to zoning ordinance affected one property with two owners). In any event, it is well established that property owners are charged with knowledge of relevant statutory provisions affecting the control or disposition of such property. *N. Laramie Land Co. v. Hoffman*, 268 U.S. 276, 283 (1925). BBLI was not owed any process greater than the legislative determination and there is no evidence of procedural deficiencies.

7

*Second*, BBLI argues in the alternative that, if notice was proper, the Amended KCRO is void for vagueness. [7 at 9]. To satisfy "the void-for-vagueness test," an enactment must be "understandable by persons of ordinary intelligence and not subject to arbitrary enforcement." *Planned Parenthood of Ind. & Ky, Inc. v. Marion Cty. Prosecutor*, 7 F.4th 594, 604 (7th Cir. 2021). Perfect clarity is not required. "[B]ecause we are condemned to the use of words, we can never expect mathematical certainty from our language." *Hill v. Colorado*, 530 U.S. 703, 733 (2000) (cleaned up).

The Amended KCRO is understandable by persons of ordinary intelligence and not subject to arbitrary enforcement. BBLI contends many provisions of the Amended KCRO are vague,[3] but BBLI's issue with several of these provisions stems not from any alleged vagueness, but rather from a policy dispute. For example, the Court is not persuaded that any foreclosing lender does not understand their obligations under the Amended Ordinance because of an alleged misalignment between the stated purpose and the outcome. [16 at 4]. Similarly, BBLI's concerns that "new" tenants or tenants "involved in criminal activity or [] under investigation for harassment" but not evicted are entitled to relocation fee payments is a policy dispute, not evidence of vagueness. *See* [16 at 6–7]. So too with BBLI's complaints that tenants can decline a lease renewal at the same rate without affecting their right to a relocation fee payment, or that there is no minimum amount of rent a tenant must pay during their tenancy to qualify for the relocation fee. *See id.*

---

[3] BBLI asserts these arguments only in its reply brief. *Compare* [7 at 9] *with* [16 at 4–7]. "Arguments raised for the first time in a reply brief are waived." *James v. Sheahan*, 137 F.3d 1003, 1008 (7th Cir. 1998). Nevertheless, the Court considers BBLI's arguments.

8

BBLI's arguments that other provisions of the Amended KCRO are vague also fail. KCRO §§ 5-14-040(b) and 5-14-050(a) do not contradict one another. *See* [16 at 4–5]. § 5-14-050(a) sets forth a foreclosing lender's obligation to pay a relocation fee unless a qualified tenant accepts an offer for a new lease. § 5-14-040(b) merely states that the foreclosing lender's obligations to either offer a new lease or pay the relocation fee are not discharged if an occupant fails to return disclosure forms. § 5-14-040(b) does not alter the foreclosing lender's obligations. Nor does a lack of a deadline by which tenants must return the disclosure forms render the Amended Ordinance vague. *See id.* at 5–6. As discussed, a foreclosing lender's obligations are unchanged even if the form is never returned. Amended KCRO § 5-14-040(b). Furthermore, § 5-14-050(a)(3) sets the deadlines by which a qualified tenant must respond to an offer for a new lease and § 5-14-050(b) sets deadlines to pay relocation fees relative to the date the rental unit is vacated. There is no ambiguity there. The Amended KCRO is not silent as to existing leases. The entire Ordinance is aimed at addressing the fate of existing leases after a foreclosure. *See id.* at 6. Finally, the penalty provision is clear [*id.*]: foreclosing lenders must pay a penalty "two times the relocation assistance fee," or $21,200, "in addition to a relocation assistance fee." § 5-14-050(f).

BBLI has not satisfied its burden to demonstrate a strong likelihood of success on the merits of its procedural due process claim. *See Illinois Republican Party*, 973 F.3d 760, 762–63.

### b. Substantive Due Process

BBLI contends the Amended KCRO is so arbitrary as to violate substantive due process. [7 at 9–10]. BBLI argues the Amended Ordinance is arbitrary because foreclosing lenders are required to pay a relocation fee to tenants who live in a recently foreclosed residential property and there is no explanation for or limits on the tenants' use of the fee.[4] *Id.* This is insufficient to establish a substantive due process violation.

Substantive due process is "a modest limitation that prohibits government action only when it is random and irrational." *Gen. Auto Serv. Station v. City of Chicago*, 526 F. 3d 991, 1000 (7th Cir. 2008). Where no fundamental right is implicated, substantive due process requires "only that the practice be rationally related to a legitimate governmental interest." *Gen. Auto Serv. Station*, 526 F. 3d at 1000. And a law will be deemed "constitutional even if it is unwise, improvident, or out of harmony with a particular school of thought." *Goodpaster v. City of Indianapolis*, 736 F.3d 1060, 1071 (7th Cir. 2013) (quotation omitted).

The Amended KCRO's relocation payment requirement affects no fundamental rights and is rationally related to the City's legitimate interests. The City has a legitimate interest in keeping newly foreclosed buildings occupied with tenants and maintaining quality rental properties. The Amended Ordinance's relocation fee

---

[4] BBLI also asserts the Amended KCRO is arbitrary because it is unclear that the "either/or" provision from the Original KCRO is "no longer an option. And that there is no time limit on when a tenant must respond to an offer for a new lease." *Id.* But as discussed, *supra*, there is no ambiguity in the text of the Amended KCRO that the foreclosing lenders must pay the relocation fee unless a tenant renews his or her lease and the Amended's KCRO includes deadlines for tenants to decline lease renewals.

payment provisions aim to achieve those goals. The relocation payment is meant to incentivize foreclosing lenders to offer leases at rates tenants can afford. To level the bargaining field between landlord and tenant, the relocation fee payment accounts for the direct, indirect, and intangible costs of moving. [15 at 6] (including a security deposit, first month's rent, moving and storage fees, utilities, and lost connections to a familiar neighborhood and community among the costs of moving). Tenants thus have a true option to exercise their right to leave if renewal rents are too high or building code violations go ignored. In contrast, if the relocation payment fee was too low, there would be no incentive for landlords to offer affordable leases. Accordingly, the Amended KCRO is rationally related to the City's goals to protect renters and rental properties.

BBLI has not met its burden to demonstrate a strong likelihood of success on the merits of its substantive due process claim. *See Illinois Republican Party*, 973 F.3d 760, 762–63.

### c. Unconstitutional Taking

BBLI asserts the Amended KCRO constitutes an unconstitutional taking either as a violation of the Fifth Amendment's Public Use Clause or as a *per se* taking. [7 at 10–12]. Neither theory succeeds.

*First*, BBLI argues the Amended Ordinance "tak[es] private property for a private purpose" in violation of the "public use" restriction in the Fifth Amendment *Id.* at 10 (citing *Kelo v. City of New London*, 545 U.S. 469, 477 (2005)). BBLI contends the Amended Ordinance forces private landlords to transfer their property (cash

11

assets) to other private actors (qualified tenants) without restriction, thus not serving any public purpose. *Id.* at 11.

"[A] taking fulfills the public use requirement if it serves any legitimate purpose within the government's authority." *Berman v. Parker*, 348 U.S. 26, 32–33 (1954). Public purpose is defined "broadly" in "deference to legislative judgments in this field." *Kelo*, 545 U.S. at 480. *Levin v. City & Cty. of San Francisco*, 71 F. Supp. 3d 1072 (N.D. Cal. 2014) is analogous and instructive. There, the court held a relocation fee paid by landlords to tenants undergoing no-fault evictions that was enacted to mitigate the consequences of eviction and prevent displacement satisfied the Public Use Clause despite no restrictions on how the tenants spent the money because the city "rationally could have concluded that at least some tenants will use the payouts on housing . . . which on the margin will lessen displacement and promote community stability." *Id.* at 1080. The same logic applies here.

The City argues the Amended KCRO incentivizes foreclosing lenders to offer reasonable leases and to maintain building conditions. [15 at 7]. When tenants are dissatisfied with high rental rates or poor building conditions, they can choose to vacate the building and receive a relocation fee payment. That some tenants may elect to move and collect payment regardless of the renewal rate or state of the building does not sever the connection between the Ordinance's stated purpose and its enforcement, even if some of those tenants do not use the fee for housing.

*Second*, BBLI claims the relocation fee payment exacts a *per se* taking of the foreclosing lender's property interest in the money paid to qualified tenants. [7 at 11–

12]. The *per se* taking doctrine is inapplicable to BBLI's alleged theory, which BBLI appears to implicitly acknowledge in its reply brief. [16 at 10] (stating a taking can occur through regulatory actions by the government).[5] *FCC v. Fla. Power Corp.*, 480 U.S. 245, 252 (1987) ("statutes regulating the economic relations of landlords and tenants are not per se takings"); *see also Yee v. City of Escondido*, 503 U.S. 519, 529-30 (1992) (describing states' "broad power" to regulate "the landlord-tenant relationship in particular without paying compensation for all economic injuries that such regulation entails," including by imposing rent control and prohibiting discrimination).

Ordinances that regulate a landlord's use of land by regulating the relationship between landlord and tenant are examined under the regulatory takings test articulated in *Penn Central Transportation Co. v. New York City*, 438 U.S. 104 (1978). *See Yee*, 503 U.S. at 522–23, 528–30. When a regulation impedes a property's use but does not deprive the owner of all economic benefits, courts examine: (1) "the economic impact of the regulation"; (2) "the extent to which the regulation has interfered with distinct investment-backed expectations"; and (3) "the nature of the governmental action." *Goodpaster*, 736 F.3d at 1074.

The Amended KCRO is not a regulatory taking. The record is devoid of evidence regarding the Property's value with and without application of the Amended KCRO, or evidence other than BBLI's conclusory allegations that the Amended

---

[5] BBLI first raised a regulatory taking in its reply brief. *Compare* [7 at 11–12] *with* [16 at 10]. The argument thus is waived. *James*, 137 F.3d 1008. Nevertheless, the Court considers BBLI's arguments.

KCRO will make it commercially impracticable for it to continue operating the Property. And it is unlikely that a 200-unit building, with commercial spaces, has been deprived of practically all value, as required to establish a *Penn Central* taking. *See Concrete Pipe & Products of California, Inc. v. Constr. Laborers Pension Trust for S. California*, 508 U.S. 602, 645 (1993) ("[M]ere diminution in the value of property, however serious, is insufficient to demonstrate a taking."). BBLI also cannot show any interference with its investment backed expectations because it acquired the Property well after the enactment of the KCRO and the relevant amended version. *See Goodpaster*, 736 F.3d at 1074 (finding no interference with investment backed expectations where ordinance was in place for years and thus there should be no surprise that the ordinance was later expanded). Finally, the Amended KCRO falls squarely within the category of "public program[s] adjusting the benefits and burdens of economic life to promote the common good." *Penn Central*, 438 U.S. at 124. This character of the regulation weighs against finding a taking. *See Goodpaster*, 736 F.3d at 1074–75.

BBLI cannot show a strong likelihood of success on the merits of its alternative taking claims. *See Illinois Republican Party*, 973 F.3d 760, 762–63.

### d.  Equal Protection

BBLI argues the Amended KCRO treats foreclosing lenders differently than non-foreclosing lenders and that there is "no rational basis for forcing a foreclosing lender to pay someone to move just because they happen to be living in a foreclosed building." [7 at 12]. In response, the City proffers that the Amended Ordinance falls

14

uniformly on all lenders who foreclose residential buildings and the requirement to pay a relocation fee to qualified tenants is rationally related to the legitimate goal of keeping tenants housed. [15 at 10].

Under the Equal Protection Clause "all persons similarly situated should be treated alike." *St. Joan Antida High Sch. Inc. v. Milwaukee Public Sch. Dist.*, 919 F. 3d 1003, 1008 (7th Cir. 2019) (quoting *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)). In cases such as the instant matter where no suspect classification is implicated, courts apply "rational basis" review, which is "highly deferential to the government." *Hope v. Comm'r of Ind. Dept. of Corrections*, 66 F. 4th 647, 650 (7th Cir. 2023). If "there is any reasonably conceivable state of facts that could provide a rational basis for the classification . . . the law survives." *Id.* "Rational-basis review tolerates overinclusive classifications, underinclusive ones, and other imperfect means-ends fits." *St. Joan Antida High School*, 919 F. 3d at 1010 (collecting cases). The standard imputes "a strong presumption of validity" on the contested classification that a challenger can overcome only if it "negates every conceivable basis which might support the classification". *Id.* (citing *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313–15 (1993)) (internal quotations omitted).

BBLI cannot show that it or other foreclosing lenders are similarly situated to non-foreclosing lenders. "To be similarly situated, a comparator must be 'identical or directly comparable' to the plaintiff 'in all material respects,'" *Miller v. City of Monona*, 784 F. 3d 1113, 1120 (7th Cir. 2015). Unlike at least some non-foreclosing lenders, BBLI and other foreclosing lenders assume ownership of a mortgaged

property and become the landlord to the residents. Non-foreclosing lenders may lack control over building conditions, lease renewals, rental fees, and other factors that are within the control of a foreclosing lender as landlord. By subjecting all foreclosing lenders to the same regulatory obligations under the Amended KCRO, the City treats similarly situated lenders alike.

BBLI also cannot show there is no rational basis to regulate the conduct of similarly situated foreclosing lenders. The purpose of the Amended Ordinance is "to preserve, protect, maintain, and improve rental property and prevent occupied buildings from becoming vacant after foreclosures." Amended KCRO § 5-14-010. As the City persuasively argues, the contested provision of the Ordinance ensures that a foreclosing lender-landlord cannot avoid the obligation to pay the relocation fee by offering a lease renewal with an unaffordable rental rate. [15 at 11]. Absent the relocation fee provision, foreclosing lenders could offer renewals at exorbitant rates that tenants would necessarily reject, thus emptying newly foreclosed residential buildings in contravention of the goals of the KCRO. The Amended Ordinance may not be an exacting instrument to achieve its aims, but rational basis does not require precise classifications. *See St. Joan Antida High School*, 919 F. 3d at 1010.

Accordingly, BBLI has not carried its burden to demonstrate a strong likelihood of success on the merits of its equal protection claim. *See Illinois Republican Party*, 973 F.3d 760, 762–63.

16

## II.  Irreparable Harm and No Inadequate Remedy at Law

The second and third threshold showing BBLI must make is that it will suffer irreparable harm if a preliminary injunction is not granted and that any remedy at law would be inadequate. *Girl Scouts of Manitou*, 549 F.3d 1086. "The key word in this consideration is irreparable. Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of [an injunction], are not enough." *Sampson v. Murray*, 415 U.S. 61, 90 (1974). Harm is irreparable if legal remedies available to the movant are seriously inadequate as compared to the harm suffered. *DM Trans, LLC v. Scott*, 38 F.4th 608, 618 (7th Cir. 2022). BBLI has not shown that it has no adequate remedy at law or that it will suffer irreparable harm unless an injunction is issued.

BBLI claims it lacks an adequate remedy to avoid paying the KCRO-mandated relocation fee payment and lacks a mechanism to retract relocation fee payments made to tenants "who arbitrarily declined a good faith offer just to obtain a windfall." [7 at 13]. BBLI argues since no remedy at law exists, the continued enforcement of the Amended KCRO will cause irreparable harm because BBLI will suffer either "the forced use of their Property by tenants to which it would not have otherwise offered renewals but for the threat of monetary punishment by the City, or the City enforces a monetary extraction for every tenant that does not accept the good faith offer." [7 at 13

These alleged harms are economic and can be redressed with final judgment: BBLI either can pay $10,600 to qualified tenants or it will face monetary penalties

for failing to make payments within the timeframe required by the Amended KCRO.[6] "The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm." *Sampson*, 415 U.S. at 90; *D.U. v. Rhoades*, 825 F.3d 331, 339 (7th Cir. 2016) (concluding the standard for irreparable harm was not met because money damages could make plaintiff whole if she succeeded on her claim). Here, even if BBLI could overcome the barriers to success on the merits, discussed *supra*, monetary damages awarded at the conclusion of the litigation can make BBLI whole.

A damages award may be insufficient to redress a harm in particular circumstances if

> (1) the plaintiff is so poor he would be harmed in the interim by the loss of the monetary benefits, (2) the plaintiff would be unable to finance the lawsuit without the money he wishes to recover, (3) damages from the defendant would be unobtainable because the defendant will be insolvent prior to the final judgment, and (4) the nature of the plaintiff's loss may make damages difficult to calculate.

*Hagan v. Quinn*, No. 11-3213, 2011 WL 3241378 (C.D. Ill. July 29, 2011) (citing *Roland Mach. Co. v. Dresser Indus., Inc.*, 749 F.2d 380, 386 (7th Cir. 1984)). None of those exceptions apply here. There are no allegations relating to or evidence of BBLI's financial precarity such that any future monetary award will be too late or that it

---

[6] BBLI's arguments that it will endure irreparable harm due to "the forced use of their Property" or that the Property will be "in jeopardy" because the Amended KCRO requires a foreclosing lender to offer a 12-month lease renewal and all leases will expire at the same time is not supported by the record. *See* [7 at 13; 16 at 13]. BBLI submitted evidence of multiple qualified tenants who opted to receive the relocation fee payment, but there is no evidence in the record of tenants who renewed their lease. *See* [7-1].

could not finance this litigation in the interim. Although BBLI claims relocation fee payments cannot be retracted from *tenants*, [7 at 13], that allegation is immaterial to this inquiry, which examines *the City's* resources, as party to this suit, compared to the magnitude of potential damages. *Signode Corp. v. Weld-Loc Sys., Inc.*, 700 F.2d 1108, 1111–12 (7th Cir. 1983). BBLI does not contend that the City is nearing insolvency. Finally, BBLI's alleged losses—relocation fee payments and potential penalties—are easily ascertained and calculated.

As a rule, alleged violations of constitutional rights alone will not be sufficient to establish irreparable harm if the constitutional injury is redressable through monetary compensation. *See Hamlyn v. Rock Island Cty. Metro. Mass Transit Dist.*, 960 F. Supp. 160, 162–63 (C.D. Ill. 1997) (explaining "[t]he case law is replete with examples of courts finding no irreparable harm despite the allegation of a constitutional violation where the only remedy would be monetary in nature"). Instances where courts have determined constitutional wrongs constitute irreparable harm implicate continuing or future injury that cannot be compensated by monetary damages alone. *Id.* at 163 (citing examples of chilled speech, continued threats to plaintiff's health or safety, loss of fundamental rights that must be exercised within a prescribed time period, unlawful search and seizure and an unconstitutional taking of "unique" property). BBLI's constitutional claims—due process, takings, and equal protection—all can be adequately redressed through monetary damages. *See id.* (denying injunctive relief for equal protection claim where plaintiff failed to establish he would "suffer some injury other than a readily quantifiable monetary loss");

19

*Wisconsin Cent. Ltd. v. Pub. Serv. Comm'n of Wisconsin*, 95 F.3d 1359, 1370 (7th Cir. 1996) (denying injunctive relief based on due process claim "because the portended harm is redressable through monetary compensation"); *Bennett v. City of Centreville*, No. 20-CV-530-JPG, 2020 WL 6079233, at *4 (S.D. Ill. Oct. 15, 2020) (denying injunctive relief based on takings claim because "money damages are adequate").

BBLI also asserts it is a "well-known lender being targeted for not following the ordinance" and faces potential irreparable reputational harm if it does not make relocation fee payments to the "ten or so" tenants who have asserted their rights under the amended KCRO. [7 at 14; 16 at 12–13]. Without more, these alleged harms are pure speculation. *Matta-Ballesteros ex rel. Stolar v. Henman*, 697 F. Supp. 1036, 1038 (S.D. Ill. 1988) (explaining "more than mere speculation of irreparable harm" is required to "afford the applicant such an extraordinary remedy").

Even if BBLI's alleged reputational harm was substantiated with evidence, the harm stems not from the application of the Amended KCRO but by BBLI flouting its obligation under the Ordinance to pay relocation fees to qualified tenants. *Cf.* [7 at 14]. BBLI can avoid any alleged reputational harm by complying with the Ordinance and making the payments. If BBLI did face reputational injury from the application of the Ordinance, the injury likely is not significant and any potential damage could be adequately remedied by a later determination that BBLI did not owe any payments to tenants. *See Sampson*, 415 U.S. at 91 (reasoning that alleged humiliation and reputational damage would not be significant and whatever

20

potential damage could be fully corrected by an administrative determination requiring the agency to conform to the applicable regulations).

Thus, BBLI has not made a threshold showing that it will suffer irreparable harm if the injunction is not granted traditional legal remedies would be inadequate.

## III. Balance of Harms and Public Interest

The Court has determined BBLI did not make a threshold showing of likelihood of success on the merits, irreparable harm, and no adequate remedy at law. *See supra.* Each of these findings independently doom BBLI's request for injunctive relief. Accordingly, the Court need not balance the harms. *See Girl Scouts of Manitou Council, Inc.*, 549 F.3d at 1086 (only if the party has shown a likelihood of success on the merits, irreparable harm, and no adequate remedy at law does the court balance the harms); *Abbot Labs v. Mead Johnson & Co.*, 971 F.2d 6, 11 (7th Cir. 1992) (court will balance the equities only if the "threshold factors are met").

Even if BBLI could satisfy the threshold factors, the balance of equities does not strongly favor a grant of injunctive relief. When balancing the harms, this Court must weigh the irreparable harm that BBLI would endure without the protection of the preliminary injunction against any irreparable harm the City would suffer if the Court were to grant the requested relief. *See Roland Machinery*, 749 F.2d at 388. The higher BBLI's likelihood of success, the less strong of a showing BBLI must make that the balance of harms is in its favor and vice versa. *Id.*, 749 F.2d at 388.

BBLI contends the Amended KCRO "jeopardizes the entire Chicago rental market" and that suspending the relocation fee payment provision would increase

21

acceptances of offers for new leases in recently foreclosed buildings. [7 at 14–15]. The City responds that BBLI's concerns of a rental market in jeopardy are overstated with just one enforcement action so far and that BBLI has the opportunity to raise its constitutional defenses in the class action proceeding. [15 at 15].

The public has an interest in a stable rental housing market that provides tenants continued access to affordable housing in good condition. As discussed *supra*, the Amended KCRO achieves those interests by incentivizing landlords to offer reasonable rental rates and maintain building conditions to encourage tenants to renew their leases.

Because BBLI cannot show a likelihood of success on the merits, irreparable harm, or a lack of adequate remedy at law, the balance of harms must weigh heavily in its favor. BBLI cannot meet that burden.

## IV. *Younger* and The Anti-Injunction Act

The City argues BBLI's motion fails for two additional reasons: BBLI's requested relief—"to enjoin application of the Keep Chicago Renting Ordinance," [7 at 15]—is barred by the *Younger* abstention doctrine and the Anti-Injunction Act, 28 U.S.C. § 2283. [15 at 13–14]. In addition to this matter, BBLI is involved with two other adjudicative matters regarding its alleged violations of the Amended KCRO: the pending class case and administrative proceedings. [7-1 ¶ 18, 54]. The City alternatively asserts the Court should not enjoin those proceedings on these grounds. *Id.* BBLI contends *Younger* and the Anti-Injunction Act are inapplicable here where the class case BBLI faces was removed to the Northern District of Illinois on July 18,

2024. *See Anthony Cervantes et al. v. BBLI Edison LLC et al.,* Case No. 1:24-cv-06098 (N.D. Ill.). BBLI does not address the impact of the state administrative proceeding.

Given the Court's determination that BBLI did not meet the threshold standards for preliminary relief, it need not reach a conclusion to deny the requested relief under either *Younger* or the Anti-Injunction Act.

## CONCLUSION

For the stated reasons, BBLI's motion for a temporary restraining order and preliminary injunction [7] is denied.

E N T E R:

Dated: September 6, 2024

MARY M. ROWLAND
United States District Judge

23