IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BBLI EDISON LLC, a Delaware limited liability company; | |
| Plaintiff, | Case No. 24-cv-04925 |
| v. | Judge Mary M. Rowland |
| CITY OF CHICAGO, | Judge Young B. Kim |
| Defendant. | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff BBLI Edison, LLC, ("BBLI") brings suit against the City of Chicago ("Defendant" or "City") alleging a provision relating to relocation fees pursuant to the Keep Chicago Renting Ordinance, Municipal Code of Chicago, Ill. Chapter 5-14, is impermissibly vague, overbroad, penal in nature, and unconstitutional. Before the Court is the City's motion to dismiss BBLI's amended complaint under Federal Rules of Civil Procedure 12(b)(6). [17, 17-1]. For the reasons stated herein, the City's motion is granted.

BACKGROUND

The Court incorporates the background section of its memorandum opinion and order denying BBLI's Motion for Preliminary Injunction and Temporary Restraining Order by reference and assumes familiarity with the facts set forth therein. [21] at 1–4. The incorporated factual allegations and the following factual allegations taken from the amended complaint [8] are accepted as true for the purposes of the motion to dismiss. *See Lax v. Mayorkas*, 20 F.4th 1178, 1181 (7th Cir.

1

2021).

Plaintiff BBLI owns an apartment building with over 200 rental units in Chicago, Illinois. [8] ¶ 1. It took ownership of the building after a foreclosure. *Id.* ¶29. BBLI brought this suit challenging the Keep Chicago Renting Ordinance as amended on July 21, 2021 (the "Amended Ordinance" or "Amended KCRO"). It alleged the Amended KCRO violates Due Process, Equal Protection, and Takings clauses. BBLI previously sought preliminary equitable relief prohibiting the City from enforcing the provisions of the Amended KCRO relating to relocation fees. [7]. The Court denied preliminary relief. [21].

Now before the Court is the City's motion to dismiss the Amended Complaint in its entirety. [17]. In its response to the City's motion to dismiss, BBLI agreed to voluntarily dismiss Count III, which raised an Equal Protection Clause claim, and Count IV, which sought a writ of mandamus. [28] at 1 n.1.

## STANDARD

"To survive a motion to dismiss under Rule 12(b)(6), the complaint must provide enough factual information to state a claim to relief that is plausible on its face and raise a right to relief above the speculative level." *Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 333 (7th Cir. 2018) (quoting *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014)); *see also* Fed. R. Civ. P. 8(a)(2) (requiring a complaint to contain a "short and plain statement of the claim showing that the pleader is entitled to relief"). A court deciding a Rule 12(b)(6) motion "construe[s] the complaint in the light most favorable to the plaintiff, accept[s] all

2

well-pleaded facts as true, and draw[s] all reasonable inferences in the plaintiff's favor." *Lax*, 20 F.4th at 1181. However, the court need not accept as true "statements of law or unsupported conclusory factual allegations." *Id.* (quoting *Bilek v. Fed. Ins. Co.*, 8 F.4th 581, 586 (7th Cir. 2021)). "While detailed factual allegations are not necessary to survive a motion to dismiss, [the standard] does require 'more than mere labels and conclusions or a formulaic recitation of the elements of a cause of action to be considered adequate.'" *Sevugan v. Direct Energy Servs., LLC*, 931 F.3d 610, 614 (7th Cir. 2019) (quoting *Bell v. City of Chicago*, 835 F.3d 736, 738 (7th Cir. 2016)).

Dismissal for failure to state a claim is proper "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007). Deciding the plausibility of the claim is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).

## ANALYSIS

### I. Alleged Violation of Due Process Rights

#### a. Void for Vagueness Claim

BBLI alleges the Amended KCRO is arbitrary and void for vagueness under the Fourteenth Amendment "because its purpose is inapposite of its writing." [8] ¶¶ 87. The Amended Ordinance requires

> the owner of a foreclosed rental property shall pay a one-time relocation assistance fee of $10,600 to a qualified tenant unless the owner negotiates in good faith for a new rental agreement that lasts at least 12 months, offers such qualified tenant a new rental agreement according

3

>to these terms, and the qualified tenant accepts the owner's offer in writing.

MCC § 5-14-050(a)(1). BBLI alleges "[t]here is no logical way of interpreting the Amended Ordinance other than to assume it is an 'either' 'or' situation." [8] ¶ 32. BBLI claims it understood its obligations under the ordinance as either to offer a new lease or pay the relocation fee, but not both. *Id.* ¶ 41. It asserts "one would have no reason to interpret the Ordinance in any other way" given that the KCRO's stated purpose is "to prevent vacant foreclosed residential buildings and preserve tenancies in these properties" even after it was amended. *Id.* ¶¶ 22, 33. The City contends the plain language of the Amended Ordinance is unambiguous and frames BBLI's claim as a policy dispute. [17-1] at 4–6.

Overly vague laws are unconstitutional under the Due Process Clause of the Fifth and Fourteenth Amendments. *Planned Parenthood of Ind. & Ky, Inc. v. Marion Cty. Prosecutor*, 7 F.4th 594, 598 (7th Cir. 2021) (citing *Connally v. Gen. Const. Co.*, 269 U.S. 385, 391 (1926)). To sustain a vagueness challenge, a plaintiff must show the law (1) does not provide a person of ordinary intelligence a reasonable opportunity to know what is prohibited, or (2) fails to provide explicit standards to prevent arbitrary and discriminatory enforcement by those enforcing the statute. *Id.* at 604. Perfect clarity is not required. *Hill v. Colorado*, 530 U.S. 703, 733 (2000) ("[B]ecause we are condemned to the use of words, we can never expect mathematical certainty from our language.") (cleaned up). The degree of tolerated vagueness varies based on the nature of the enactment. *Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*, 455 U.S. 489, 498 (1982). For example, laws with civil rather than criminal penalties

do not require a high level of clarity because "the consequences of imprecision are qualitatively less severe." *Id.* So too with economic regulations because businesses facing economic demands "can be expected to consult relevant legislation in advance of action." *Id.*

Outside the context of the First Amendment, "a plaintiff can only succeed in a facial challenge by "establish[ing] that no set of circumstances exists under which the Act would be valid," *i.e.*, that the law is unconstitutional in all of its applications." *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 449 (2008) (*citing United States v. Salerno*, 481 U.S. 739 (1987)). Plaintiff does not contend its claim implicates the First Amendment. The question then is whether there is "no set of circumstances [ ] under which the Act would be valid," which includes in its application to BBLI. *United States v. Salerno*, 481 U.S. 739, 745 (1987).

An ordinary person would understand that tenants are entitled under the Amended KCRO to the relocation fee even if the foreclosing landlord makes a good faith offer to sign a new lease for the property. This meaning is reiterated in various provisions and is clear when the Amended Ordinance is read as a whole. *See, e.g.*, MCC § 5-14-040(a)(1) (stating a tenant "may reject the offer of a new rental agreement and still receive $10,600 in relocation assistance"). Indeed, even BBLI pleads that very interpretation is possible. [8] ¶ 25. Whether the Amended Ordinance contradicts the stated purpose, as BBLI pleads, is a policy dispute, not the source for a constitutional vagueness claim.

BBLI's other vagueness contentions are insufficient to state a claim.

5

Conclusory allegations that the City engaged in "arbitrary and discriminatory enforcement" of the Amended KCRO without any elaboration regarding these allegedly deficient enforcement actions do not support a due process claim. *See* [8] ¶¶ 21, 91. Likewise, BBLI's complaint that the Amended Ordinance lacks guidance as to how many times an owner must offer a new lease or the relocation fee to the tenant and that it does not contain a deadline for tenants to accept or decline such an offer is insufficient. *Id.* ¶¶ 40–41. The Amended Ordinance requires the owner to negotiate in good faith. MCC § 5-14-050(a)(1). Additionally, BBLI is seeking a more exacting level of clarity than courts require of civil laws regulating economic activity. *See Vill. of Hoffman Ests*, 455 U.S. at 498.

Finally, BBLI cannot save its claim by arguing the online "Notice to Tenant" form is vague. [28] at 3–4. This argument fails for several reasons. First, although the Amended Complaint acknowledges the existence of the online form, it is devoid of *any* allegations that the form contradicts the Amended KCRO. [8] ¶ 37. A brief in opposition to a motion to dismiss ordinarily cannot serve to amend the complaint by expanding on the factual allegations contained therein. *See e.g.*, *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984), *cert. denied*, 470 U.S. 1054 (1985). Second, the vagueness inquiry examines the text of the challenged law, not summary administrative forms. *See Pittway Corp. v. United States*, 102 F.3d 932, 943 (7th Cir. 1996). BBLI cannot assert its vagueness claim based on extra-statutory text. Finally, the complete plain text of the online form does not contradict the Amended KCRO.

BBLI cannot establish that the Amended KCRO is vague in all its applications. Therefore, Count I is dismissed.

### b. Procedural Due Process Claim

In Count II of the Amended Complaint, BBLI pleads that the City violated its due process rights under the Fourteenth Amendment to meaningful notice and opportunity to be heard when being deprived of fundamental liberty interests. [8] ¶¶ 95–99. To plead a procedural due process violation, Plaintiffs must allege (1) a cognizable property interest, (2) a deprivation of that interest, and (3) a denial of due process. *Palka v. Shelton*, 623 F.3d 447, 452 (7th Cir. 2010). BBLI contends the relocation fee provision of the Amended KCRO limits its use of its property, however, the City made "no attempt to notify Plaintiff or any lender" before discussing and enacting the Amended Ordinance. [8] ¶¶ 96–98.

The City disputes that Plaintiff is entitled to any process, and specifically not individualized notice, other than as the legislative process provides. [17-1] at 6–7. Parties challenging legislative actions are not entitled to any process beyond that provided by the legislative process. *Bi-Metallic Inv. Co. v. State Bd. of Equalization*, 239 U.S. 441, 445–46 (1915); *Texaco, Inc. v. Short*, 454 U.S. 516, 535 (1982) ("it has never been suggested that each citizen must in some way be given specific notice of the impact of a new statute on his property before that law may affect his property rights"); *Protect Our Parks, Inc. v. Chicago Park Dist.*, 971 F.3d 722, 738 (7th Cir. 2020) ("legislative determination provides all the process that is due") (quoting *Dibble v. Quinn*, 793 F.3d 803, 809 (7th Cir. 2015)). A claim based on a failure to provide

individualized notice of legislative action, therefore, is not cognizable.

In its opposition, however, BBLI abandons any claim that it was entitled to individualized notice[1] and asserts that its procedural due process claim is rooted in the City's failure to follow the procedures mandated under the Illinois Constitution, the Illinois Municipal Code, and the Municipal Code of Chicago. [28] at 6–7. But BBLI only pleaded that the City "made no attempt to notify Plaintiff or any lender," which sounds like the individualized notice claim from which BBLI has retreated. [8] ¶98. It did not allege any other facts about the legislative procedures much less violations of specific statutory notice requirements.[2] *See* [8]. Instead, Plaintiff only complains of violations of rights under the Fourteenth Amendment. BBLI's allegations are insufficient to identify denied process.

Plaintiff's attempts to distinguish the City's case law are unavailing. [28] at 6–7. That there were multiple public hearings at which residents could raise objections in *Protect Our Parks* is inconclusive here, where Plaintiffs have not pleaded any facts about the legislative process. Conversely, according to BBLI, the Amended KCRO

---

[1] BBLI's position is contrary to the arguments it advanced in support of its motion for preliminary injunctive relief ([7] at 7–8 (arguing no attempts were made to notify interested parties of the public hearing at which the Amended KCRO was adopted and contending notice would not have imposed a burden on the City)) and contrary to its other arguments opposing the City's *instant* motion ([28] at 7 (distinguishing *Texaco* on the grounds that the Amended KCRO "only impacts certain residential landlords" and therefore the Amended Ordinance is not a law "uniformly affecting all citizens" such that individual notice may be required and *Bi-Metallic Inc* on the basis that the plaintiff had the individualized opportunity to appeal his taxes through the usual process)). The Court previously rejected that BBLI and other lenders were entitled to individualized notice. [21] at 6–7.

[2] BBLI erroneously argues the City "fails to provide evidence that it has adhered to the proper procedures mandated by the Illinois Constitution," the "Illinois Municipal code," and the Municipal Code of Chicago. [28] at 6. At this stage of litigation, a defendant need only establish the legal insufficiency of the complaint, not to present evidence to defeat the claims.

was addressed during at least two hearings. [7] at 2 (citing the livestreamed July 14, 2021 Committee on Housing and Real Estate meeting and the July 21, 2021 City Council meeting at which the Amended Ordinance unanimously passed). As a result, the due process claim fails.

### c. Substantive Due Process Claim

BBLI claims the Amended KCRO arbitrarily, irrationally, and illegitimately deprives Plaintiff and property owners like BBLI of their property rights. [8] ¶¶ 149–50, 158. BBLI also contends the Amended Ordinance "does not rationally advance any legitimate government purpose." *Id.* ¶¶ 148–49. These claims sound in substantive due process. *Id.* ¶¶ 132–53 (Counts VII and IX). Count VIII presents a facial challenge, which means Plaintiff bears the burden of establishing the Amended KCRO's application is unconstitutional in every conceivable circumstance. *Ezell v. City of Chicago*, 651 F.3d 684, 698 (7th Cir. 2011) ("[A] law is not facially unconstitutional unless it 'is unconstitutional in all of its applications.'") (citing *Wash. State Grange*, 552 U.S. at 449). The City argues BBLI's substantive due process claims fail because BBLI misrepresents the requirements of the Amended Ordinance and because the Amended KCRO is supported by a rational basis. [17-1] at 7–9. The Court agrees. BBLI has not pleaded facts sufficient to establish a facial or applied substantive due process claim.

Substantive due process is "a modest limitation that prohibits government action only when it is random and irrational." *Gen. Auto Serv. Station v. City of Chicago*, 526 F. 3d 991, 1000 (7th Cir. 2008). Where no fundamental right is

implicated, substantive due process requires "only that the practice be rationally related to a legitimate governmental interest." *Gen. Auto Serv. Station*, 526 F. 3d at 1000. And a law will be deemed "constitutional even if it is unwise, improvident, or out of harmony with a particular school of thought." *Goodpaster v. City of Indianapolis*, 736 F.3d 1060, 1071 (7th Cir. 2013) (quotation omitted).

The City has a legitimate interest in keeping newly foreclosed buildings occupied with tenants, maintaining quality rental properties, and mitigating the damaging effects of foreclosures on individuals and communities. MCC § 15-40-010. Contrary to BBLI's argument that the relocation fee provision incentivizes tenants to vacate foreclosed properties ([28] at 9), the relocation fee provision facilitates the KCRO's goal of keeping buildings occupied. It encourages foreclosing lenders to offer leases at rates agreeable to existing tenants and to address building code violations. Moreover, this arguably serves the broader purpose of the Amended KCRO and benefits the community at large, not just tenants of an individual building because the Ordinance encourages maintaining affordable, quality housing in the area. *See* [29] at 6. If some tenants choose to vacate even after being offered an affordable lease, that does not destroy the relationship to the aims of the Amended KCRO. Likewise, the City does not violate substantive due process by utilizing multiple avenues to achieve its aims, such as addressing building code violations through the Amended Ordinance and in building court. *See Johnson v. Daley*, 339 F.3d 582, 594 (7th Cir. 2003) ("Legislatures often, and legitimately, select multiple devices" to "achieve a given objective").

10

In its response, BBLI newly contends the Amended Ordinance is another form of rent control and a "way around" *Rivera v. Bank of New York Mellon*, 2021 IL App (1st) 192188, which struck down the Original KCRO. [28] at 4. This argument is unavailing. Unlike the provision of the Original KCRO that set a limit on the rental rate foreclosing landlords could offer tenants, the Amended KCRO does not restrict rental rates an owner may charge. *Rivera*, 2021 IL App (1st) 192188, ¶¶ 25, 27. Furthermore, BBLI does not allege a violation of the Illinois Rent Control Preemption Act. [29] at 7; *see also Car Carriers*, 745 F.2d at 1107 (factual allegations cannot be added to a complaint through an opposition to a motion to dismiss).

Thus, the Amended KCRO is rationally related to the City's goals to protect renters and rental properties. Counts VII and IX are dismissed.

## II. Alleged Regulatory Taking

"The Takings Clause of the Fifth Amendment [made applicable to the States through the Fourteenth Amendment] states that 'private property shall not be taken for public use, without just compensation.'" *Knick v. Twp. of Scott, Penn.*, 588 U.S. 180, 184 (2019) (cleaned up); *see also Murr v. Wisconsin*, 582 U.S. 383, 392 (2017). BBLI contends the Amended KCRO constitutes an unconstitutional taking in contravention of the Fifth Amendment. [8] ¶¶ 121–42 (Counts VI and VII). BBLI alleges two theories of liability: (1) the relocation fee provision benefits private parties—renters—rather than the general public, thus violating Public Use Clause (*id.* ¶¶ 121–31); and (2) the relocation payments are a taking in the form of an

11

"improper monetary exaction" (*id.* ¶¶ 132–42). Plaintiff failed to allege facts to plausibly support either theory.

### a. Public Use Claim

BBLI contends the Amended KCRO enacts a taking for a private purpose. The Constitution forbids the state from taking private property for the sole purpose of transferring it to another private party, even with just compensation. *Kelo v. City of New London*, 545 U.S. 469, 477 (2005); *Hawaii Hous. Auth. v. Midkiff*, 467 U.S. 229, 245 (1984) ("A purely private taking could not withstand the scrutiny of the public use requirement; it would serve no legitimate purpose of government and would thus be void."). Likewise, private property may not be taken under the mere pretext of a public purpose when its actual purpose is to bestow a private benefit. *Kelo*, 545 U.S. at 478. But "a transfer to a private owner can still be constitutional if it is done for a 'public purpose,'" *Protect Our Parks, Inc. v. Chicago Park Dist.*, 971 F.3d 722, 737 (7th Cir. 2020). The concept of public use is broadly interpreted as "public purpose." *Kelo*, 545 U.S. at 480. Governments are afforded "broad latitude in determining what public needs justify the use of the takings power." *Id.* at 483. "[A] taking should be upheld as consistent with the Public Use Clause as long as it is 'rationally related to a conceivable public purpose.'" *Id.* at 490; *see also Daniels v. Area Plan Comm'n of Allen Cnty.*, 306 F.3d 445, 460 (7th Cir. 2002) (explaining the burden on the government to show the existence of a public use is "remarkably light").

BBLI alleges the relocation fee provision of the Amended KCRO mandates owners of rental properties to transfer their money to tenants without restriction on

12

future use of the funds after the tenant receives the money. [8] ¶¶ 123–25. The tenants are not required to use the relocation fee for rent or other relocation expenses and may use the transferred money for any private purpose of the private party's choosing, thus conferring a benefit on the tenants that outbalances any benefit to the general public. *Id.* ¶¶ 124–25. According to BBLI, the fee provision serves both a private purpose and a private use. *Id.* ¶ 128.

The City argues the relocation fee provision is rationally related to the Amended Ordinance's goal of providing tenants with financial resources to relocate if their new landlord raises rents or fail to correct unsafe housing conditions. [17-1] at 11–12. However, BBLI asserts the Amended KCRO does not advance any of the City's interests under certain circumstances, such as when there are no code violations, and the landlord offers the tenant a reasonable lease without an increase of rent.[3] [28] at 5 n.3.

At least one federal court recognized a similar unrestricted lump-sum payment from one private party (a landlord) to another (a tenant) is consistent with the Public Use Clause. *Levin v. City & Cnty. of San Francisco*, 71 F. Supp. 3d 1072, 1080 (N.D. Cal. 2014), *appeal dismissed and remanded*, 680 F. App'x 610 (9th Cir. 2017). San Francisco's relocation fee was paid by property owners to tenants experiencing no-fault evictions to mitigate the consequences of eviction and prevent displacement. There, the court reasoned that the city of San Francisco "could have concluded that

---

[3] The City argues BBLI's response abandons its Public Use claim. Failure to respond to an argument result in waiver. *Bonte v. U.S., N.A.*, 624 F.3d 461, 466 (7th Cir. 2020). Nevertheless, the Court will address the claim, which BBLI references in a footnote. *See* [28] at 5 n.3.

13

at least some tenants will use the payments on housing and at least some will purchase housing in San Francisco, which on the margin will lessen displacement and promote community stability." *Id*. So too here. Even if some tenants elect to move and collect payment regardless of the renewal rate or condition of the building does not sever the connection between the Ordinance's stated purpose and its enforcement, regardless of whether some of those tenants do not use the fee for housing.

BBLI has failed to allege sufficient facts to support its claim that the Amended KCRO amounts to an impermissible private purpose taking under the Fifth Amendment. At most, Plaintiff alleges that there are limited circumstances under which enforcement of the Ordinance will not promote the City's goals. Judicial review over this claim is "extremely narrow" and the Court will not engage in judicial oversight over complicated policy considerations. Accordingly, BBLI's Taking for a Private Purpose Claim is dismissed.

### b. Exaction Claim

BBLI pleads the relocation fee payments are an impermissible monetary exaction and taking of private property. To state a claim for a violation of the Takings Clause, a plaintiff must allege "(1) that the governmental entity 'took' his property, either through a physical taking or through unduly onerous regulations; (2) that the taking was for a public use; and (3) that, no matter what type of property (real or personal) was taken, the government has not paid just compensation." *Conyers v. City of Chicago*, 10 F.4th 704, 710–11 (7th Cir. 2021) (cleaned up). "The Supreme Court has long recognized, however, that while property may be regulated to a certain

14

extent, if regulation goes too far it will be recognized as a taking." *Mogan v. City of Chicago*, 115 F.4th 841, 847 (7th Cir. 2024) (cleaned up), *reh'g denied*, No. 22-2801, 2024 WL 4534752 (7th Cir. Oct. 21, 2024).

BBLI argues the Amended KCRO makes an extortionate demand for property—potentially large sums of money in the form of relocation fee payments—as a condition to the exercise of property rights—an owner's right to remove a building from the rental market. [28] at 8–9; [8] ¶ 133. BBLI asserts this violates the unconstitutional conditions doctrine, as articulated in *Nollan v. California Coastal Commission*, 483 U.S. 825 (1987) and *Dolan v. City of Tigard*, 512 U.S. 374 (1994). *Id.* The City disputes that an exaction occurs under the Amended Ordinance and instead contends the legislation should be analyzed as a regulatory taking. [17-1] at 12. The City also contends BBLI's unconstitutional conditions doctrine argument "repackages" BBLI's exaction claim under a different name despite asserting the same theory. [29] at 8–9.

Under the unconstitutional conditions doctrine, "the government may not require a person to give up a constitutional right … in exchange for a discretionary benefit conferred by the government where the benefit sought has little or no relationship to the property." *Dolan*, 512 U.S. at 385. "A predicate for any unconstitutional conditions claim is that the government could not have constitutionally ordered the person asserting the claim to do what it attempted to pressure that person into doing." *Koontz v. St. Johns River Water Mgmt Dist.*, 570 U.S. 595, 612 (2013). In other words, BBLI must first show that the Amended KCRO

15

constitutes a taking of a property interest under the Takings Clause to trigger the unconditional conditions doctrine analysis. *See Home Builders Ass'n of Greater Chicago v. City of Chicago*, 213 F. Supp. 3d 1019, 1026 (N.D. Ill. 2016). If the City could not have ordered BBLI to take the actions required under the Amended Ordinance without violating the Constitution, then the City must show an "essential nexus" between the condition and the end it seeks to achieve, and a "rough proportionality" between the condition and the proposed development." *Id.*

BBLI has not plausibly stated a claim that the Amended Ordinance effects an exaction. Therefore, there can be no valid unconstitutional conditions takings claim. The Amended KCRO restricts the way the property owners may use its property by imposing a relocation fee payment if tenants do not renew their leases. *See Yee v. Escondido*, 503 U.S. 519, 532 (1992) (describing mobilehome park rent control ordinance as "a regulation of [the mobilehome park owners'] use of their property, and thus does not amount to a *per se* taking"). A restriction on the use of property—including money—is not a taking that would require just compensation, unless the restriction constitutes a physical taking or goes so far as to be a regulatory taking under *Penn Central Transportation Co. v. New York City*, 438 U.S. 104 (1978). *See Yee*, 503 U.S. 519, 528–29 ("This Court has consistently affirmed that States have broad power to regulate housing conditions in general . . . without paying compensation for all economic injuries that such regulation entails.").

Here, BBLI claims if the City "demanded that Plaintiff give its money to displaced tenants, it would be responsible for a *per se* physical taking of Plaintiff's

16

property in violation of the Constitution." [8] ¶ 135. As the Court previously held, the *per se* taking doctrine is inapplicable to BBLI's alleged theory. [21] at 13; *see also FCC v. Fla. Power Corp.*, 480 U.S. 245, 252 (1987) ("statutes regulating the economic relations of landlords and tenants are not *per se* takings").

BBLI does not allege the Amended Ordinance deprives it of all economically beneficial use of its land. When a regulation impedes a property's use but does not deprive the owner of all economic benefits, courts examine: (1) "the economic impact of the regulation"; (2) "the extent to which the regulation has interfered with distinct investment-backed expectations"; and (3) "the nature of the governmental action." *Goodpaster*, 736 F.3d at 1074.

The Amended KCRO is not a regulatory taking. BBLI has not alleged a diminishment of its property's value with and without application of the Amended KCRO nor has it alleged the Amended KCRO will make it commercially impracticable for it to continue renting at the property. *See Concrete Pipe & Products of California, Inc. v. Constr. Laborers Pension Trust for S. California*, 508 U.S. 602, 645 (1993) ("[M]ere diminution in the value of property, however serious, is insufficient to demonstrate a taking."). BBLI also has not alleged any interference with its investment backed expectations because it acquired the Property well after the enactment of the KCRO and the relevant amended version. *See Goodpaster*, 736 F.3d at 1074 (finding no interference with investment backed expectations where ordinance was in place for years and thus there should be no surprise that the ordinance was later expanded). Finally, the Amended KCRO falls squarely within the

17

category of "public program[s] adjusting the benefits and burdens of economic life to promote the common good." *Penn Central*, 438 U.S. at 124. This character of the regulation weighs against finding a taking. *See Goodpaster*, 736 F.3d at 1074–75.

Accordingly, BBLI's Exaction and Taking of Private Property is dismissed.

### III. Request for Declaratory Relief

Finally, BBLI asserts a claim for declaratory relief. [8] ¶¶ 110–20 (Count V). BBLI seeks a determination of several issues, most of which are addressed and dismissed above, such as whether the Amended KCRO is invalid as vague, impermissibly permits a taking, or violates due process. *Id.* ¶ 120. Unique to Count V is Plaintiff's request to have the Amended KCRO declared "impermissibly penal in nature." *Id.* ¶ 120(a). The City argues BBLI's claim for declaratory relief fails. The Court agrees and dismisses Count V.

The City argues the Declaratory Judgment Act does not create an independent cause of action. [17-1] at 15 (citing *Powers v. United States*, 218 F.2d 828, 829 (7th Cir. 1954)). Indeed, the Declaratory Judgment Act does not create new substantive rights and a claim under the Act "must present a recognizable previously existing justiciable controversy." *Powers*, 218 F.2d at 829. Accordingly, BBLI's claim for declaratory judgment is not cognizable as an independent cause of action and is dismissed. *See Sieving v. Cont'l Cas. Co.*, 535 F.Supp.3d 762, 774 (N.D. Ill. 2021) (dismissing claim "because requests for declaratory judgment . . . are not independent causes of action" (cleaned up)); *Keesler v. Electrolux Home Prods., Inc.*, No. 16 C 199, 2016 WL 3940114, at *3 (N.D. Ill. July 21, 2016) (striking count seeking declaratory

relief because "the federal Declaratory Judgment Act provides only a form of relief, not an independent claim for relief" (citation omitted)).

BBLI asserts it is entitled to declaratory relief even if it cannot assert an independent claim for a declaratory judgment. [28] at 10 n.7. Courts have discretionary power to issue declarations under the Declaratory Judgment Act *Deveraux v. City of Chicago*, 14 F.3d 328, 330 (7th Cir. 1994) (citing 28 U.S.C. § 2201). "[H]owever . . . courts may not exercise this discretionary power in the absence of an 'actual controversy' between the parties." *Id.* The controversy must be "real and substantial . . . as distinguished from an opinion advising what the law would be upon a hypothetical state of facts*." MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 138 (2007) (cleaned up).

Here, BBLI has not plausibly pleaded an actual controversy to permit declaratory relief. As described above, BBLI has stated a claim that the Amended KCRO violates Due Process or the Takings clauses. Moreover, BBLI's request for a declaration that the Amended KCRO is impermissibly penal also fails to establish an actual controversy. The City contends the Amended KCRO is civil in nature ([17-1] at 15), but BBLI asserts its effect on lenders is punitive ([28] at 11 n.8). When assessing whether a law is punitive, Courts defer to the legislature's stated intent. *Hope v. Comm'r of Indiana Dep't of Corr.*, 9 F.4th 513, 530 (7th Cir. 2021) (citing *Kansas v. Hendricks*, 521 U.S. 346, 361 (1997)). Only the "clearest proof that the statutory scheme is so punitive in either purpose or effect" will suffice to override legislative intent to enact a civil law. *Id.* Allegations that the Amended KCRO

punishes owner-landlords for exercising their property rights to remove their buildings from the rental markets are insufficient. *See, e.g.*, [8] ¶¶ 147, 157. The fact that the Amended Ordinance allows for an additional payment if the owner does not make a relocation payment within seven days of the tenant vacating the property does not automatically make it punitive in nature. *Id.* ¶ 20.

Count V asserting a claim for declaratory judgment is dismissed.

## CONCLUSION

For the stated reasons, the City of Chicago's motion to dismiss the amended complaint [17] is granted.

E N T E R:

Dated: March 7, 2025

MARY M. ROWLAND
United States District Judge